UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

IN THE MATTER OF THE APPLICATION
OF TOWN OF NORTH HEMPSTEAD
COMMUNITY DEVELOPMENT AGENCY
FOR THE ACQUISITION OF A CERTAIN
PARCEL OF LAND KNOWN AS SECTION 11,
BLOCK 48, LOTS 1-20, 62, 66-72 LOCATED
AT 142 MAGNOLIA AVENUE AT THE
CORNER OF MAGNOLIA AVENUE AND
RAILROAD AVENUE, NEW CASSEL,
NEW YORK PURSUANT TO THE
NEW CASSEL URBAN RENEWAL PLAN.

REPORT AND
RECOMMENDATION

CV 05-1932 (TCP) (JO)

------------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

On April 20, 2005, respondents Geraldine Savage and Margaret Savage (collectively the "Savages") removed this case from New York State Supreme Court, Nassau County. Docket Entry ("DE") 1. On June 3, 2005, petitioner the Town of North Hempstead Community Development Agency (the "Town") filed a motion to remand with supporting papers. *See* DE 6, Attachment 1 at 1-2 ("Notice Of Motion"), 3-6 (Declaration [of Mark A. Cuthbertson] In Support Of Motion To Remand ("Cuthbertson Dec.")), 7-13 (Memorandum Of Law In Support Of Petitioner's Motion To Remand And For Costs And Fees ("Memo.")), Attachment 3 ("Reply"). The Savages oppose the motion. DE 6 Attachment 2 at 1-2 ( Declaration [Of Edward M. Gould] In Opposition), 3-6 (Memorandum Of Law In Opposition to Petitioners['] Motion To Remand ("Opp.")). On July 7, 2005, the Honorable Thomas C. Platt, United States District Judge, referred the motion to me for a report and recommendation. Having reviewed the parties' submissions, I now make that report and respectfully recommend that the court grant the Town's motion to remand the case to the state court.

I.  Background

The instant action is a condemnation proceeding in which the Town seeks to acquire by eminent domain a parcel of real property purportedly owned by the Savages as part of the New Cassel Urban Renewal Plan (the "Plan"). *See generally* DE 1, Attachment 1 at 2-5 ("Petition"). The Town drafted the Plan in July 2003 with the stated objectives of eliminating blight, creating new housing, redeveloping deteriorated properties, improving public safety, and generating economic growth. *See* DE 6, Attachment 1 at 25-38 (Urban Renewal Plan). The plan identified several properties for acquisition, including the one claimed by the Savages at issue in this litigation. *Id.* at 3.

Pursuant to Article 2 of the New York Eminent Domain Procedure Law ("EDPL"), the Town held a number of publicly-noticed hearings over the course of a 13-month period from August 12, 2003 through September 20, 2004, at which it passed various resolutions in furtherance of the plan: it adopted the Plan, identified the premises to be acquired, and authorized the acquisition of subject properties (including the Savages'), by friendly acquisition or condemnation. *See* Petition 2-3. The Town published certain findings supporting its authorization of such condemnations in local newspapers, as required by the EDPL. *Id.*

As part of its acquisition program, the Town offered to purchase the property here at issue from the Savages for $1,190,000. The Savages declined the offer. The Town thus initiated a condemnation proceeding pursuant to Article 4 of the EDPL by Notice Of Petition dated March 3, 2005. DE 1, Attach. 1 at 1-2 (Notice Of Petition). The Savages answered the petition on April 7, 2005. Their pleading raised three affirmative defenses predicated on a contention that the Town failed to comply with the requirements of the EDPL; two general defenses alleging,

2

respectively, that the Town engaged in misconduct and that the Plan was invalid; and six counterclaims. Five of those counterclaims were grounded in the Savages contention that the property at issues is used as a place of worship. Specifically, the Savages raises two Constitutional claims under 42 U.S.C. § 1983 alleging violations of their First Amendment rights of free exercise of religion and freedom of association, and three claims under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc. In their final counterclaim (filed prior to the Supreme Court's decision in *Kelo v. City of New London*, 125 S.Ct. 2655 (2005)), the Savages challenged the condemnation proceeding as an unconstitutional taking in violation of the Fifth Amendment. DE 1, Attach. 3.

In addition to raising the various claims and defenses, the Savages also gave notice in their answer of their intent to remove the case to this court. *Id.* at 3. They made good on that pledge on April 20, 2005. In their Notice of Removal, DE 1 ("Notice"), the Savages purported to rely on 28 U.S.C. § 1443 as the basis for moving the case to this court. The Town promptly served a notice of motion to remand, and the parties agreed to a briefing schedule. *See* DE 3. I thereafter stayed discovery pending resolution of that motion. *See* DE 5. The parties filed the motion and all relevant briefs and other papers on June 3, 2005. DE 6.

II.     Discussion

The Town asserts that the case must be remanded because this court lacks subject matter jurisdiction over the dispute, and it also seeks reimbursement of its fees and costs pursuant to 28 U.S.C. § 1447(c). *See* Memo. at 2-5. The Savages aver that the case is properly before this court because state law offers no avenue for judicial review of their federal Constitutional and statutory counterclaims. *See* Opp. at 3-4. Although the Savages' position might support the exercise of

federal jurisdiction if the case came before the court in a different procedural posture, I am constrained to agree with the Town that the court lacks jurisdiction to entertain this case as a removal action.

A. Removal Jurisdiction

"The defendant bears the burden of demonstrating the propriety of removal." *Grimo v. Blue Cross/Blue Shield of Vermont,* 34 F.3d 148, 151 (2d Cir. 1994). The Savages seek to meet their burden in this regard by arguing, in essence, necessity: they have federal counterclaims that require a federal forum. In particular, they seek to rely on two provisions of federal law, "rules 1446 and 1443," as authority for removal. *See* Notice. I assume, and the context makes plain, that in citing the two "rules," the Savages' attorney intended to invoke Sections 1443 and 1446 of Title 28 of the United States Code. As discussed below, neither statute suffices for the Savages' purpose: the latter merely prescribes the procedures governing removal without providing an independent basis of jurisdiction for accomplishing it, and the former allows the removal of only a narrow category of civil rights claims – a category that does not encompass the instant dispute.

1. Section 1443

The Savages' reliance on § 1443 is understandable, if ultimately misplaced: its title refers somewhat misleadingly to "civil rights cases." In fact, the statute allows for the removal of only two specific categories of "civil actions or criminal prosecutions" – and the boundaries of those two categories have been narrowly defined by courts interpreting the statute. First, § 1443 permits the removal of cases in which the defendant is being denied, or cannot enforce in the state court, "a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof." 28 U.S.C. § 1443(1). The statute's

4

second clause allows removal of actions brought against officials "for any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law." § 1443(2).

Because the Savages are not officials of any federal, state, or local government, the latter provision is plainly not apposite. Its first prong is restricted to "federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights." *Greenwood v. Peacock*, 384 U.S. 808, 824 (1966). The second prong – which allows removal where the defendant asserts that he is being sued for refusing to perform an act that would be inconsistent with a federal "equal rights" law – is restricted to "state officers, and those acting with or for them including local and municipal officials." *White v. Wellington*, 627 F.2d 582, 585 (2d Cir. 1980). As a result, the Savages' attempt to remove the case to federal court must stand or fall on the applicability of the first clause of § 1443, which refers to laws "providing for the equal civil rights of citizens[.]"

Each of the Savages' first five counterclaims raises a distinct challenge to the Town's eminent domain proceeding on the ground that it deprives them of religious freedoms guaranteed by federal civil rights statutes. A plain-text reading of § 1443(1) would thus appear to give the Savages the right to remove the proceeding to this court. Whatever merits such a textualist approach might have, however, compatibility with controlling case law is not among them. To the contrary, the Supreme Court has unequivocally rejected such a broad reading, and instead interpreted the statute to allow the removal of a "civil rights" claim only where "the right allegedly denied the removal petitioner arises under a federal law 'providing for specific civil rights stated in terms of *racial equality*.'" *Johnson v. Mississippi,* 421 U.S. 213, 219 (1975)

5

(quoting *Georgia v. Rachel*, 384 U.S. 780, 792 (1966) (emphasis added). The Court based that narrow reading of the statute on the fact that it originated as a provision of the Civil Rights Act of 1866 that used the phrase "equal civil rights" to refer specifically to those rights bestowed by that act – namely, civil rights laws "stated in terms of racial equality." *Id.*

The Savages' attempt to characterize the federal laws on which they rely as protections of their "civil rights" must therefore fail, as neither (in the circumstances of this case) concerns racial equality. First, the Savages' claim that the Town violated 42 U.S.C. § 1983 by depriving them of their rights under the First and Fourth Amendments is barred – at least as a predicate for removal under § 1443(1) – by a decision of the Supreme Court that is directly on point. In *Rachel*, the Court explicitly held that § 1983 cannot support removal under § 1443(1) because its guarantees "are phrased in terms of general application available to all persons or citizens" and not in "the specific language of racial equality" that Congress contemplated in providing for the removal of "civil rights" cases. 384 U.S. at 792.

The Savages' claim that the Town's eminent domain proceeding violates their rights under RLUIPA fares no better as a basis for removal under § 1443(1). As the full title of RLUIPA suggests, the statute has as its core concern religious freedom, not racial equality. Congress enacted RLUIPA to enhance the freedom of religious exercise with respect to, among other things, land use regulation. 146 Cong. Rec. S7774-01, 2000 WL 1079346 (July 27, 2000) (joint statement of Sen. Hatch and Sen. Kennedy). The statute's legislative history suggests a clear intent to end discrimination against churches through zoning codes and "the highly individualized and discretionary processes of land use regulation." *Id.* Nothing in RLUIPA's text or in its legislative history suggests any connection between the concern with religious

6

discrimination and the enactment of a right states in terms of "racial equality." As a result, none of the Savages' counterclaims may properly serve as the predicate for removing the case to federal court under 28 U.S.C. § 1443.

2. Section 1441(a)

The general removal statute, 28 U.S.C. § 1441, allows a defendant to remove a case to federal court only where that court has subject matter jurisdiction over the original action. In other words, a necessary condition for proper removal is that the original action filed in state court could just as well have been filed in federal court. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Where the parties to such a case are citizens of the same state, as is the case here, such removal requires federal-question jurisdiction pursuant to 28 U.S.C. § 1331. *Id*. As explained below, the Town's petition could not have been filed in federal court, and therefore § 1441 does not allow the Savages to bring it here simply by virtue of a response to that complaint that does raise questions of federal law.

    a. The Well-Pleaded Complaint Rule

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. 392 (quoting *Gully v. First National Bank,* 299 U.S. 109, 112-113 (1936)). This rule allows a plaintiff to avoid federal jurisdiction by raising only state law claims. *Id.* (characterizing the plaintiff as "master of the claim"). It is axiomatic that neither a defense to the claims in a complaint nor a counterclaim can serve as the basis for removal, even if such a defense or

7

counterclaim is grounded in federal law. *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 831 (2002).

The complaint in this case is the Town's petition asserting its right under the law of New York – and only under the law of New York – to acquire the Savages' property by eminent domain. The petition thus does not raise any issues of federal law. Further, as discussed below, nothing in that pleading triggers any exception to the well-pleaded complaint rule.

The rule has three narrow exceptions that allow the removal of cases that formally raise only state law claims but that are nevertheless essentially questions of federal law: the "complete preemption" doctrine, the "artful pleading" doctrine, and the "irregular removal" doctrine. Under the first such exception, the well-pleaded complaint rule does not bar removal of a claim that is brought in a field that is so "utterly dominate[d]" by federal common or statutory law that "all claims brought within [it] necessarily arise under federal law." *See Marcus v. AT&T Corp*. 138 F.3d 46, 53 (2d Cir. 1998) (citing *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65-66 (1987)). Complete preemption requires express congressional intent to make a "specific action within a particular area removable*." Id.* at 54.

The circumstances of this case plainly do not lend themselves to this doctrine. As a field of law, few matters are less amenable to being described as preempted by federal law than the "local political issue" of eminent domain. *See Broadway 41st Street Realty Corp. v. New York State Urban Development Corp.*, 733 F. Supp. 735, 742 (S.D.N.Y. 1990). Congress was undoubtedly concerned with abuses in local land use processes that have the effect of discriminating on the basis of religion; but there is nothing in the text or legislative history of

8

RLUIPA to suggest that in addressing that concern Congress sought to occupy the field and disallow state law claims of eminent domain.

The artful pleading doctrine is similarly inapplicable here. It allows removal where a plaintiff disguises an essentially federal complaint in "state garb" by framing federal claims in state law terms or "omitting to plead necessary federal questions." *Marcus*, 183 F.3d at 55. As there is nothing federal about the complaint here at issue, this exception cannot apply.

The only exception to the well-pleaded complaint rule that does not rely on the essentially federal nature of a complaint is irregular removal. This doctrine applies in the very limited situation where: (1) the complaint (or in this case, the petition) provides no basis for removal; (2) the adversary does not object to the removal; and (3) the removing party's answer asserts a counterclaim raising federal jurisdiction. *Fax Telecommunicaciones Inc.*, *v. AT&T*, 138 F.3d 479, 487-88 (2d Cir. 1998). The doctrine plainly has no application here as the Town has not only objected to removal, but now seeks to undo it.

The Savages may thus rely on neither § 1441 nor § 1443 to remove this case to federal court. Their attempt to do so may be understandable, and they are hardly the first to have sought to remove condemnation proceedings on the basis of alleged violations of Constitutional and other federal rights. But the law in this area is settled and those previous similar attempts have failed. *See Town of Haverstraw,* 361 F. Supp.2d 317, 319 (S.D.N.Y. 2005). I therefore turn to the Savages' remaining argument that their necessity fills the gaps in federal removal law that would otherwise bar them from removing this case to federal court on the strength of their defenses and counterclaims alone.

B.    Necessity And The *Younger* Abstention Doctrine

At the heart of the Savages' necessity theory is their claim that the EDPL does not provide them a forum for judicial review of their counterclaims. That assertion is largely, but not entirely, correct. The EDPL sets forth procedures governing five separate stages of a condemnation proceeding. In the second of those five stages, known as the "Article 2" phase, the prospective condemnor identifies the properties to be acquired and the authority to acquire them and then publishes the supporting determinations and findings. *See* EDPL § 207; *Didden v. Village of Port Chester*, 304 F. Supp.2d 548, 564 (2d Cir. 2004). During the Article 2 phase, an aggrieved property owner does have an opportunity to seek judicial review of the condemnor's findings by filing an appeal within 30 days in the local Appellate Division of the New York State Supreme Court. EDPL § 207(A). The relevant provision of the EDPL plainly allows litigants such as the Savages, in seeking such judicial review of the Article 2 phase findings, to raise at least some of the claims they now wish to litigate in this court. Specifically, an aggrieved party may challenge whether:

> (1) the proceeding was in conformity with *the federal and state constitutions*; (2) the proposed acquisition is within the condemnor's statutory jurisdiction or authority, (3) the condemnor's determinations and findings were made in accordance with the procedures set forth in this article and with article eight of the environmental conservation law, and (4) a public use, benefit, or purpose will be served by the proposed acquisition.

EDPL § 207(C) (emphasis added).

The EDPL thus did afford the Savages an opportunity to raise their federal constitutional claims in state court. S*ee Sunrise Prop., Inc. v. Jamestown Urban Renewal Agency,* 614 N.Y.S.2d 841 (App. Div. 1994); *Brody v. Village of Port Chester*, 345 F.3d 103, 113 (2d Cir. 2003). In reaching that conclusion, I assume that the Savages could have used the EDPL

procedures to raise objections under the federal Constitution that are substantively identical to the federal statutory claims they seek to raise here pursuant to 42 U.S.C. § 1983.  However, as far as I can discern from the record before me, they did not avail themselves of that opportunity.

It is because they did not take advantage of that opportunity that the Savages are correct to the extent that they assert they *no longer* have an opportunity to raise their federal Constitutional counterclaims in state court.  The thirty-day window of appeal afforded by Article 2 is apparently the only opportunity to challenge a condemnation proceeding on such grounds. *See Didden*, 304 F. Supp.2d at 565.  At the time the Savages removed the condemnation proceeding to this court, it was in the "Article 4" or "acquisition" phase, during which only procedural challenges are allowed.  *Id*.  The Savages thus are technically correct in asserting that they now have no procedural opportunity in the EDPL proceeding to raise their federal Constitutional claim.  They are also entirely correct in saying they have no avenue under state law to vindicate their federal statutory rights under RLUIPA:  the EDPL simply does not allow a party to raise a federal statutory challenge to a condemnor's findings.  *Faith Temple Church v. Town of Brighton, N.Y.,* 2005 WL 66210, *3 (W.D.N.Y. Jan. 12, 2005).

The Town appears to counter the Savages' necessity argument by reference to the doctrine of abstention embraced by *Younger v. Harris* , 401 U.S. 37 (1971), and its progeny.  *See* Memo. at 4-5.  In *Younger*, the Supreme Court first established the equitable principle that federal courts should not enjoin or interfere with ongoing state court proceedings.  *See* 401 U.S. at 41.  Although *Younger* itself applied the abstention doctrine in a case involving state criminal court proceedings, the principle has since been extended to civil proceedings, including state administrative proceedings.  *See Middlesex County Ethics Committee v. Garden State Bar Ass'n*,

11

457 U.S. 423 (1982). In particular, a federal district court should abstain from interfering with a state court administrative proceeding if: "[the] proceeding constitute[s] [an] ongoing state judicial proceeding[]" implicating "important state interests" and state court procedures offer "adequate opportunity" for the plaintiff to raise any federal Constitutional claims. *Id.* at 435. Federal courts frequently apply the doctrine specifically to abstain from eminent domain proceedings. *See*, *e.g.*, *Didden*, 304 F. Supp.2d at 564 ("New York eminent domain proceedings always satisfy the first two prongs of *Younger*."); *Broadway 41st Street Realty Corp. v. New York State Urban Dev. Corp.,* 733 F. Supp. 735, 740-742 (S.D.N.Y. 1990).

Given the case law discussed above, the Town's reliance on the abstention doctrine is misplaced in two respects. First, to the extent the Town asserts that this court lacks *jurisdiction* under *Younger*, *see* Memo. at 4, it is plainly mistaken. Abstention is a judicially-created equitable principle, not a jurisdictional limitation on the court's authority imposed by the Constitution or act of Congress. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813-814 (1976) ("The doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."). This court may well lack authority to entertain the lawsuit in its current posture as an EDPL proceeding improvidently removed in violation of the well-pleaded complaint rule, but that does not mean it would lack subject-matter *jurisdiction* over a free-standing complaint alleging the same violations of federal law as the Savages have raised as counterclaims.

Second, even viewing the Town's argument as a more appropriately modest appeal to equitable principles, its proposed application of the *Younger* abstention doctrine does not overcome the Savages' claim of necessity. While it is true that federal courts will ordinarily

abstain from intervening in condemnation proceedings, that fact is to some extent a result of the opportunity that property owners have to raise their constitutional challenges during the Article 2 phase. *See Broadway 41st Street Realty Corp.*, 733 F. Supp. at 740-42. The rationale – or perhaps merely the equitable justification – for abstention is thus absent where the property owner has not had such an opportunity. *Cf. Brody*, 345 F.3d at 113-116 (federal constitutional claims not barred by res judicata since individual was not given notice of the condemnation proceeding and thus could not have raised the constitutional challenges to the Appellate Division). This case presents just such circumstances: regardless of whether the Savages have waived their constitutional claims by failing to pursue them in an Article 2 challenge, there can be no dispute that they have never yet had an opportunity to vindicate their claim of federal statutory rights under RLUIPA, and will not have such an opportunity if the condemnation proceedings return to state court. Accordingly, the doctrine of abstention does not suffice to bar the Savages from pursuing their federal statutory claim in this court. *See Faith Temple Church v. Town of Brighton*, 2005 WL 66210, at *3 (W.D.N.Y. Jan. 12, 2005).

One of the salutary effects of federal abstention is that it can avert duplicative litigation. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-818 (1976) (holding that abstention may be appropriate in "exceptional circumstances" to avoid duplicative litigation). But that benefit cannot be achieved in a case such as this where the claim the property owners wish to pursue is one that the state will not entertain in considering a condemnor's assertion of eminent domain. It may nevertheless be inefficient for parties to assert their respective claims in different courts, but that is no reason to deny one side its opportunity to seek appropriate relief. *See Faith Temple Church*, 2005 WL 66210, at *4 (rejecting abstention

under "exceptional circumstances" rule because EDPL § 207 would not adequately protect the plaintiff's rights under RIULPA and because the fact that both state and federal lawsuits were in a nascent phase meant that there was no significant risk of piecemeal litigation). The same considerations would likely weigh in favor of a federal forum for any independent, meritorious RIULPA challenge that the Savages might later raise to the condemnation proceeding.

        C.        <u>A Remand, Although Inefficient, Is Required Under The Circumstances</u>

The dispute between the Town and the Savages is thus trapped in an anomalous procedural posture. On one hand, the Savages *could* have brought their federal statutory claims of religious discrimination to this court by filing an original complaint rather than removing their counterclaims. Had they done so, the Town could not properly have objected on the basis of the *Younger* abstention doctrine. But that is not what the Savages have done.

On the other hand, had the Town properly appreciated the limits of the abstention doctrine, it *could* have recognized that a federal forum is available to the Savages for their federal statutory claims and therefore acquiesced in the removal. Had it done so, the "irregular removal" exception to the well-pleaded complaint rule would have permitted the case to remain in federal court notwithstanding the improvidence of the Savages' removal notice. *See Fax Telecommunicaciones Inc.*, 138 F.3d at 487-88. But that is not what the Town has done.

As a result, the law seems to require the court to remand the case to state court – notwithstanding the fact that the Savages can apparently bring the same dispute back here by filing an affirmative complaint. As inefficient as that result will prove to be if the Savages do indeed resuscitate their federal statutory claims by filing an original complaint in this court, it appears there is no alternative as things currently stand. Absent the Town's consent, which

14

would trigger the "irregular removal" rule, this court lacks subject matter jurisdiction over this case and must therefore remand it to the state court from whence it came.

      D.      <u>Attorneys' Fees And Costs</u>

Much of the preceding discussion of the *Younger* abstention doctrine – and in particular all of the discussion about the potential viability of an original complaint that the Savages have not in fact filed – would normally be advisory in nature and thus inappropriate for inclusion in a discussion of a motion to remand. That motion can and should be decided on the basis of the law applicable to cases brought under the pertinent removal statutes, 28 U.S.C. §§ 1441 and 1443. The reason I include the additional analysis is that it bears directly on the Town's application for reimbursement of its costs, including attorneys' fees, associated with its motion for remand.

"An order remanding [a] case may require payment of just costs and any actual expenses, including fees, incurred as a result of the removal." 28 U.S.C. 1447(c). Such an award is entirely discretionary. *See Town of Haverstraw v. Barreras*, 361 F. Supp.2d 317, 320 (S.D.N.Y. 2005) (no award); *Children's Village v. Greenburgh Eleven Teachers' Union Fed'n of Teachers, Local 1532*, 867 F. Supp. 245, 248 (S.D.N.Y. 1994) (finding that an award was appropriate in light of the "absence of any reasonable basis" for removal and awarding $5,000 in attorneys' fees). Although I ultimately conclude that the case should be remanded, as explained above the need for remand flows equally from the Town's intransigence in recognizing that the law gives the Savages a federal forum for their federal statutory claims as from the Savages' choice of the wrong procedural mechanism for seeking relief in this court. In such circumstances, an award of fees and costs would be unjust. I therefore recommend that the court exercise its discretion to deny the Town's application for such reimbursement.

III.     Recommendation

For the reasons set forth above, I respectfully recommend that the court grant the Town's motion to remand the case to Supreme Court, Nassau County, but deny its application for the reimbursement of attorneys' fees and costs.

IV.     Objections

This Report and Recommendation will be filed electronically on the court's ECF system and is deemed served on all parties as of the date of such filing. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to me within 10 days of the date of this order. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.2d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Brooklyn, New York
         March 13, 2006

                                                                                    /s/ James Orenstein
                                                                                    JAMES ORENSTEIN
                                                                                    U.S. Magistrate Judge